OPINION
{¶ 1} Damien H. appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of his children, A.H. and J.H., to the Montgomery County Children Services Board ("MCCSB"). The children's mother, Kristina W., has not appealed from the grant of permanent custody. For the following reasons, the judgment of the trial court will be AFFIRMED. *Page 2 
 I. {¶ 2} On September 17, 2003, MCCSB filed a dependency complaint regarding A.H. and J.H. The complaint alleged that Kristina was unemployed, had a criminal history, had violated the terms of her probation, was alleged to be using crack cocaine, and was arrested the previous day while shoplifting at Wal-Mart. Damien and the children were with Kristina at the Wal-Mart; Damien was also arrested. At that time, J.H. was sixteen months old and A.H. was three months old. The court promptly adjudicated the children dependent, and it granted temporary custody to MCCSB in January 2004. MCCSB created a case plan for Kristina and Damien with the goal of reunification of the family.
 {¶ 3} On July 9, 2004, MCCSB sought permanent custody of A.H. and J.H. . Damien's mother, Deanna H., and Kristina's parents, Roy and Cynthia W., filed motions for legal custody of the children. After several continuances, a hearing on the motions was held on September 9, 2005. The magistrate concluded that reasonable efforts had been made to reunify the family, that the children could not be placed with either parent within a reasonable time, and that granting permanent custody to the agency was in the children's best interest. Kristina's parents and Damien each filed objections to the magistrate's decision. On June 21, 2007, the trial court overruled the objections and adopted the magistrate's decision.
 {¶ 4} Damien appeals, arguing that the trial court's decision was based on insufficient evidence and was against the manifest weight of the evidence. Although these arguments are presented in two assignments of error, Damien has addressed them in a single discussion, and we will do likewise. *Page 3 
 II. {¶ 5} On appeal, Damien claims that the trial court erred in finding that he did not successfully complete his case plan and that permanent custody of the children to MCCSB was in their best interest.
 {¶ 6} In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); In re J.R., Montgomery App. No. 21749, 2007-Ohio-186, ¶ 9. However, the court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re Forrest S. (1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307;Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 7} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency, (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. *Page 4 
 {¶ 8} As an initial matter, the agency, the magistrate, and the trial court each stated that the children had been in the agency's custody for twelve months of a consecutive twenty-two month period under R.C. 2151.414. If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d). However, in determining whether a child has been in the custody of the agency for the twelve or more months of a consecutive twenty-two month period, the court may not consider the period of time subsequent to the filing of the agency's motion for permanent custody. In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176.
 {¶ 9} Here, the children entered foster care in September 2003, and the agency filed its motion for permanent custody in July 2004. When the motion for permanent custody was filed, A.H. and J.H. had not been in the agency's custody for twelve months. Accordingly, the trial court was required to make each of the findings under R.C. 2151.414(B)(1)(a). (We note that, despite the magistrate and the trial court's statements that the children had been the agency's custody for more than twelve months under R.C. 2151.414, both determined that reunification with the parents was not possible within a reasonable period of time, as required by R.C. 2151.414(B)(1)(a).)
 A. Placement with Damien within a Reasonable Period ofTime {¶ 10} In order to determine whether a child can be placed with either parent within a reasonable time, a trial court must comply with R.C. 2151.414(E). R.C. 2151.414(E) provides, in pertinent part: *Page 5 
 {¶ 11} "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 12} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 13} "* * *
 {¶ 14} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"
 {¶ 15} MCCSB implemented a case plan to assist Damien in remedying the *Page 6 
problems that caused A.H. and J.H.'s removal. Kristen Foster, caseworker for MCCSB, testified at the permanent custody hearing that Damien's case plan required him to: 1) undergo a substance abuse assessment, 2) participate in domestic violence counseling, 3) obtain and maintain employment, 4) establish paternity through DNA testing, 5) sign releases of information, and 6) provide the agency with the names of relatives as possible caregivers. Damien was given copies of the case plan on two occasions.
 {¶ 16} Damien contacted MCCSB in March 2004, indicating that he wanted to begin working on the case plan. Foster stated that Damien was referred to the Job Center to assist with the income objective. In May 2004, MCCSB referred him to the PATH program for the domestic violence objective. In spring 2004, Damien was referred to the Consumer Advocacy Program ("CAM") for the substance abuse objective, but Damien indicated that he was already in a program at Day-Mont for mental health (bipolar disorder) and that he could not also go to CAM. The agency permitted Damien to continue at Day-Mont.
 {¶ 17} The agency does not dispute that Damien has established paternity of the children and that he provided the names of potential caregivers. However, according to Foster, he has failed to successfully complete the additional requirements.
 {¶ 18} Foster testified that Damien informed her that he had completed domestic violence and substance abuse treatment and parenting classes while he was in jail. Although Foster requested verification, Damien did not provide any verification to her. The agency had continued concerns regarding domestic violence, because *Page 7 
Damien and Kristina continued to live together.
 {¶ 19} Damien never shared any information about his income with Foster. Damien told her that he worked at Arby's and at Taco Bell with Kristina during the summer 2004. However, Damien did not provide verification of his employment, and Foster did not ask for verification. Foster stated that Damien "has not been very forthcoming with information, so to speak, in talking with him about the case plan objectives, issues of work." She indicated that he was "pretty guarded about what's going on in his life at that time." Although Foster acknowledged that Damien had had employment, she stated that it was not consistent because Damien was in jail from October 2004 to March 2005.
 {¶ 20} Damien signed several release forms. However, Foster stated that Damien refused to sign a release of information from his probation officer, because he believed that it "had nothing to do with Children Services."
 {¶ 21} Although not specifically a part of Damien's case plan, Foster testified that she "was never given a straight answer as to where [Damien] was living" until he resided with his mother and Kristina at 85 Pawpaw Street in April 2005. Foster stated that Damien was currently living in Greenville with Kristina and a friend. Damien's mother testified that she would no longer allow Damien and Kristina to live with her, saying that she "cannot deal with their kind of life." She indicated that they "stay up at night and sleep all day" and they "party and stuff."
 {¶ 22} Damien was offered visitation with the children and he has attended seventy-five percent of the time.
 {¶ 23} Damien asserts that the evidence indicated that he completed each of his *Page 8 
case plan objectives, with the exception of the domestic violence requirement, which he claims was unnecessary. We disagree. Damien acknowledged that he did not complete the domestic violence requirement which, considering that he continued to reside with Kristina, presented a continued concern. Although Damien asserts that he has not engaged in domestic violence and there was no need for a domestic violence case plan requirement, there is no evidence that Damien objected to the domestic violence requirement when the case plan was established. Damien told the agency that he has held employment, but he did not substantiate that claim or that his income was sufficient to provide for the children. The parties acknowledge that Damien was incarcerated from October 2004 to March 2005, which impaired his ability to maintain employment. Between his release from jail and the September 2005 hearing, Damien resided in two residences, both of which belonged to other individuals. He is currently residing at a friend's home with Kristina; there is no evidence that this home is appropriate for the children. Damien's mother testified that she would not continue to reside with him due to his lifestyle, which was inconsistent with holding a job. Damien's mother acknowledged that Damien had substance abuse issues in the past, and Damien did not provide verification that he had completed substance abuse treatment. Damien refused to sign a release from his probation officer. In our view, clear and convincing evidence supported the trial court's conclusion that Damien failed to complete his case plan and that the children could not be placed with him in a reasonable period of time.
B. Best Interest of the Children
 {¶ 24} Damien further asserts that termination of his parental rights is not in the *Page 9 
children's best interest.
 {¶ 25} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. None of the factors in R.C. 2151.414(E)(7) through (11) apply in this case.
 {¶ 26} Damien states that he has demonstrated a commitment to the children by visiting with them on a fairly regular basis and by other actions which show a willingness to provide an adequate permanent home for them. Although the record demonstrated that Damien visited with the children seventy-five percent of the time, as discussed above, the evidence supported the conclusion that Damien could not provide a suitable home. The record further demonstrated that the children have been placed together in foster care since September 2003, and they are "[b]oth doing very well in the current placement." J.H. had had behavioral problems previously, but the current foster mother has not seen these behaviors. The agency expressed an intention to keep the children together, and the foster parents have expressed interest in adopting both of the children. At the time of the hearing, A.H. was two years old and had spent nearly all of her life in foster care. J.H. was three years old and had spent nearly two-thirds of his life in foster care. The trial court could have reasonably *Page 10 
determined that permanent custody to MCCSB was necessary to provide a legally secure placement. The guardian ad litem recommended that permanent custody be granted to MCCSB. Although Kristina's parents and Damien's mother both sought legal custody, there was ample evidence that the grandparents were not suitable placements. After reviewing the evidence, we find that it clearly and convincingly supports the trial court's decision that permanent custody to MCCSB was in the best interest of the children.
 {¶ 27} In summary, the trial court's grant of permanent custody to MCCSB was neither against the manifest weight of the evidence nor based on insufficient evidence. The assignments of error are overruled.
 III. {¶ 28} Having overruled the assignments of error, the judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.
 Johnna M. Shia Gary C. Schaengold Hon. Anthony Capizzi *Page 1