OPINION
{¶ 1} Tiffney S. appeals from a judgment of Clark County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her two youngest children, K.S. and K.S., to the Clark County Department of Job and Family Services ("DJFS"). The children's father, Marshall S., Jr., did not attend the permanent custody hearing, although his counsel was present, and he has *Page 2 
not appealed the termination of his parental rights. For the following reasons, the judgment will be affirmed.
 I {¶ 2} K.S. (born December 19, 2002) and K.S. (born September 29, 2005) are the youngest of eight children born to Tiffney and Marshall. DJFS first became involved with the family in February 2006, when the agency was contacted regarding a persistent toothache that one child had. When case worker Traci Schwartz-Sullivan visited the family's residence at Ronez apartments, she found an excessively cluttered four-bedroom home with the back door and stairs blocked.
 {¶ 3} Due to the condition of the home, Schwartz-Sullivan did a 30-day safety plan to remedy the situation, and the children stayed at the home of their paternal grandmother, Anita S., during that time. The agency also referred Tiffney to WorkPlus, to Help Me Grow for the youngest child, and to Project Jericho to get Tiffney out of the house with her children. The agency made arrangements for dental care for the children, many of whom needed substantial dental work. At one point, the school social worker got in touch with a church to help Tiffney clean out her house.
 {¶ 4} The case was passed to another social worker for a time, and Schwartz-Sullivan briefly resumed as the case worker in the fall. In January 2007, Schwartz-Sullivan visited the home with the current case worker. The children were again removed from Tiffney's care due to the condition of the home. Tiffney was indicted with and pled guilty to eight counts of child endangering; she served 20 days in the Clark County Jail.
 {¶ 5} Sarah Wiedeke, another social worker with Clark County Department of *Page 3 
Job and Family Services, took over the case in May 2007. At the time, the case plan for both parents required a general mental health evaluation and following any recommendations and meeting the medical needs of the children. The parents completed the assessment with Dr. Joyce Thornton, but did not follow through with the recommended counseling.
 {¶ 6} Wiedeke visited Tiffney at the end of April 2007, and the conditions at the residence were deplorable. At that point, the property manager had asked Tiffney to move or she would be evicted in May. Trisha Pace, Assistant Property Manager of Ronez, testified that the house was very unsanitary, and more than $4,000 in damage had been done. There were no windows or doors; "every window was busted out in the unit." The walls and doors had more than 90 holes. Pace indicated there was broken glass, trash and clothing everywhere. The kitchen had no tiles, the "stove and refrigerator [were] undescribable," dirty dishes were piled, cabinets were broken, and there were "gnats galore." Although Tiffney had had some housekeeping problems during her tenancy, Pace believed the property became uninhabitable after a fight between Tiffney and Marshall.
 {¶ 7} Tiffney was evicted on July 9, 2007, mainly due to housekeeping problems. Tiffney had lived at Ronez for nearly eleven years. After Tiffney's eviction, she and Marshall resided with friends and then with Marshall's mother.
 {¶ 8} On November 20, 2007, the guardian ad litem filed a report, noting that "[w]hile the parents have failed to establish a residence and the mother has failed to seek regular employment, there has not been a case plan established or provided to the parents or this Guardian which they could follow for guidance." The following *Page 4 
week, the guardian ad litem sought leave to withdraw due to an upcoming change in employment that would create a conflict of interest. A new guardian ad litem was appointed.
 {¶ 9} According to Wiedeke, after the original guardian ad litem raised concerns, an amended case plan was created in November 2007. The plan required the parents to obtain housing and employment, visit with the children, obtain a psychological evaluation with Dr. Hrinko, and provide for the children's emotional and behavioral needs. On November 30, 2007, DJFS moved for permanent custody of K.S. and K.S.
 {¶ 10} In February 2008, the parties met for mediation, and they agreed to an extension of temporary custody so that the parents could obtain a psychological evaluation with Dr. Hrinko. DJFS thus filed a motion to extend temporary custody. The court granted a 90-day extension.
 {¶ 11} A subsequent disposition review hearing was held in April 2007. At that time, the parties acknowledged that DJFS's motion for permanent custody had been delayed during the 90-day extension and that it had not been dismissed or ruled upon. The court indicated that the parties also acknowledged "that there was just cause for refiling the motion for permanent custody or to re-serve the parents with notification as to the effect of permanent custody proceedings. * * * No objection was raised to rescheduling the hearing on the motion for permanent custody filed by the Department of Job and Family Services."
 {¶ 12} The permanent custody hearing was held on July 28, 2008. Upon review of the testimony, Dr. Hrinko's evaluation reports, and the guardian ad litem report filed *Page 5 
on July 8, 2008, the court terminated Tiffney's and Marshall's parental rights and gave permanent custody of K.S. and K.S. to DJFS. The court reasoned that K.S. and K.S. could not be placed with either parent within a reasonable period of time and that permanent custody to DJFS was in the children's best interest. (The trial court had previously addressed the disposition of the older six children.)
 II {¶ 13} Tiffney raises one assignment of error on appeal:
 {¶ 14} "THE TRIAL COURT ERRED BY GRANTING THE MOTION FOR PERMANENT CUSTODY FILED BY THE CLARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 15} In her sole assignment of error, Tiffney claims that the trial court's decision to terminate her parental rights and to grant permanent custody to DJFS was not based on clear and convincing evidence. Tiffney asserts that the trial court should have provided her additional time to complete her case plan and that granting permanent custody to DJFS was not in the children's best interest.
 {¶ 16} In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); In re J.R., Montgomery App. No. 21749, 2007-Ohio-186, at ¶ 9. However, the court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re Forrest S. *Page 6 
(1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307; Cross v. Ledford
(1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 17} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency, (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 18} In evaluating whether a child can be placed with either parent within a reasonable time, a trial court must comply with R.C. 2151.414(E). R.C. 2151.414(E) provides, in pertinent part:
 {¶ 19} "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 20} "(1) Following the placement of the child outside the child's home and *Page 7 
notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 21} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. The factors in R.C. 2151.414(E)(7) through (11) include convictions of various crimes like homicide, assault and child endangerment, and withholding food or medical treatment from a child.
 {¶ 22} As stated above, Wiedeke testified that the November 2007 case plan had four general requirements: obtain housing and employment, visit with the children, obtain a psychological evaluation with Dr. Hrinko, and provide for the children's emotional and behavioral needs. *Page 8 
 {¶ 23} The children were initially removed from Tiffney's custody due to the conditions at their home. Subsequent to the removal, Tiffney was evicted from her long-term residence due to the deplorable condition of the residence. The record indicates that significant damage occurred during a domestic dispute between Tiffney and Marshall. According to Wiedeke, Tiffney and Marshall then lived with several friends and, at the time of the hearing, were temporarily residing with Marshall's parents. The $4,000 balance with Ronez prevented them from obtaining low-income housing. Tiffney testified that they were waiting for a two-bedroom house at 667½ Tibbets, but the water main from the house needed to be repaired before they could move in. Repairs did not appear to be imminent due to lack of funds. Tiffney indicated that it was difficult to find appropriate housing that they could afford.
 {¶ 24} Wiedeke testified that the agency provided employment assistance through WorkPlus, which is located next door to the agency. Both parents used that resource. Tiffney, however, had not obtained employment. Tiffney explained that she has not been working because she did not have any skills to do any type of work. She stated that she signed up for temporary work through WorkPlus, but she was never called. Although Marshall indicated to the agency that he had employment, he had not provided verification of his employment as requested. Wiedeke testified that the housing, employment and basic needs portion of the case plan had not been satisfied. On cross-examination, Wiedeke indicated that housing has been the biggest factor preventing reunification.
 {¶ 25} According to the case plan, both parents and all the children were to visit together twice per week for a total of four hours at the visitation room at Gibault. *Page 9 
Tiffney visited consistently from November 2007 to May 2008. Since May 2008, she averaged about half of the scheduled visits. Marshall's visitation had been about the same, but he missed more visits due to working. Tiffney explained that her decrease in attending visitation was due to transportation problems. Wiedeke testified that the agency offers transportation assistance, but the parents did not use it.
 {¶ 26} The psychological assessment was completed by Dr. Daniel Hrinko in March 2008. Dr. Hrinko found that Tiffney is "overwhelmed by the responsibility of caring for eight children. She appears to expect very little of them and, as a result, they have failed to learn and develop skills appropriate for individuals their age. There have been consistent reports of her failing to adequately care for and meet the needs of her children. Problems with her children's behaviors have been brought to her attention and she has failed to follow through on these concerns. This has set the stage for them not to learn appropriate self control, self-care, social, relationship, and other important skills necessary to be successful adults." He continued: "[H]er personality style of denying the existence of problems, minimizing the severity of these problems, rationalizing the reason for problems recently identified, and failing to accept the responsibility of assisting her children in addressing these problems, all contribute to her pattern of inaction when it comes to meeting the needs of her children." Dr. Hrinko recommended that Tiffney receive mental health counseling "to develop a more accurate means of assessing the nature and extent of the problems her children face and the responsibilities she has at providing a safe and appropriate home for them while holding them accountable and responsible for their own actions and contributions to the operation of the home." *Page 10 
 {¶ 27} The agency provided referrals for the recommended counseling, but Tiffney did not participate in any mental health counseling. When asked about why she had not followed through with counseling, Tiffney explained that Mercy Mental wanted a medical card. Tiffney stated that she then called Family Service, but there was a waiting list for funds. Tiffney acknowledged that she did not contact DJFS regarding her difficulty in obtaining counseling. Wiedeke also indicated that Tiffney would have been eligible for transportation services, but she did not request assistance.
 {¶ 28} Wiedeke testified that the agency had considered placing the children with Anita S., the paternal grandmother. However, the agency had concerns with the placement "due to lack of supervision and Anita's failure to make sure that the children were not returning back home to the unsafe environment." Wiedeke was not aware of any other potential family placements.
 {¶ 29} Wiedeke believed that permanent custody was in the best interest of the children. The guardian ad litem also recommended permanent custody to the agency. The guardian ad litem found that the parents "have not demonstrated much desire to achieve their goals to have even two of the children returned to them. They have provided many excuses and `reasons' as to why they have been unsuccessful, but very little progress." The guardian ad litem indicated that the children need stability and they have bonded with their foster mother, who had expressed an interest in adopting them.
 {¶ 30} Upon review of the evidence, we conclude that DJFS presented clear and convincing evidence that permanent custody to the agency was in the children's *Page 11 
best interest and that the children could not be returned to Tiffney within a reasonable period of time. Tiffney was evicted from her 11-year residence and had been unable to obtain suitable housing for the children for approximately a year. She remained unemployed, had recently decreased contact with the children, and did not comply with the recommendation to obtain counseling. Tiffney had not satisfied the requirements of her case plan. There was also evidence of domestic violence with the children's father, prior convictions for child endangerment, and the provision of inadequate medical and dental care.
 {¶ 31} Although the children expressed that they missed their siblings, the children were bonded to their foster mother, who wished to adopt them. The children's siblings had been placed elsewhere. The children's medical and dental needs were being addressed. The case worker and the guardian ad litem both recommended permanent custody to DJFS.
 {¶ 32} Although the trial court could have considered extending temporary custody to allow Tiffney more time to satisfy her case plan, the trial court was presented with clear and convincing evidence that the children could not be returned to Tiffney within a reasonable period of time and that granting permanent custody to DJFS was in the children's best interest. The trial court did not err in terminating Tiffney's parental rights and granting permanent custody to DJFS.
 {¶ 33} Tiffney's sole assignment of error is overruled.
 III {¶ 34} Having overruled the assignment of error, the judgment of the trial court will be affirmed. *Page 12 
DONOVAN, P.J. and GRADY, J., concur.
 Amy M. Smith, Virginia L. Crews, Hon. Joseph N. Monnin. *Page 1