OPINION
{¶ 1} Virginia R., the mother of Z.R., S.R., and J.R., appeals from three judgments of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of her three children to Montgomery County Children Services ("MCCS").
 {¶ 2} On February 19, 2003, Virginia took her two children, Z.R. and S.R., to MCCS because she felt that she was incapable of caring for them and feared she might hurt them. At that time, the children were approximately twenty-two months and five months old, respectively. MCCS obtained temporary custody of the children and developed a case plan for reunification. The case plan objectives included completion of the following: domestic violence classes; mental health evaluations, including compliance with recommended counseling and medication usage; parenting classes; and visitation with the children twice per week. Later, an additional objective was added requiring the maintenance of stable income, housing, and utilities. The legally-recognized father of Z.R. and S.R. was included in the case plan, but he subsequently surrendered his parental rights voluntarily.
 {¶ 3} On July 9, 2004, MCCS filed a motion for permanent custody of Z.R. and S.R. based on Virginia's non-compliance with the case plan objectives. While that motion was pending, on December 7, 2004, Virginia gave birth to her third child, J.R. MCCS promptly took custody of J.R. and filed a motion for permanent custody of her as well, based on the removal of the other children and Virginia's non-compliance with the case plan related to them. The man identified by Virginia as J.R.'s father was excluded through paternity testing, and no other father was identified.
 {¶ 4} The case was referred to a magistrate, who conducted a hearing in April and June 2005. The magistrate subsequently recommended that permanent custody of the three children be awarded to MCCS. Virginia filed objections to the magistrate's decision. On August 1, 2006, the trial court overruled the objections and awarded permanent custody to MCCS.
 {¶ 5} Virginia raises four assignments of error on appeal. We will address the first two assignments together.
 {¶ 6} "I. THE TRIAL COURT DECISION REGARDING Z.R. AND S.R. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 7} "II. THE TRIAL COURT DECISION REGARDING J.R. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} Virginia argues that she completed substantial parts of her case plan with respect to Z.R. and S.R., but that she was "doomed" to fail becauseof her mental illness and inadequate support from MCCS. She claims that she needed "a life coach or personal tutor to help coordinate all the requirements of her extensive case plan" but got only a "cookie-cutter case plan" instead. She also claims that she needed more time to complete the case plan objectives because of her mental health issues and her intervening pregnancy. With respect to J.R., Virginia contends that MCCS made no attempt to prevent removal of the child or to reunify her with the child because it had already moved for permanent custody of the other children by the time J.R. was born. Finally, she suggests that the foster family that cared for all three children interfered with reunification because the family was interested in adopting the children.
 {¶ 9} In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E). The court's decision to terminate parental rights, however, will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re Forrest S. (1995), 102 Ohio App.3d 338, 345,657 N.E.2d 307; Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. R.C. 2151.414(B)(1)(d) provides that, when a child has been in the custody of a children services agency for twelve or more months of a consecutive twenty-two month period, the trial court may grant permanent custody to the agency if it finds that it is in the best interest of the child to do so. This is the standard under which the trial court awarded permanent custody of Z.R. and S.R. to MCCS.
 {¶ 10} As we discussed briefly supra, Virginia voluntarily surrendered Z.R. and S.R. to MCCS because she was depressed and unable to care for them. She suffered from chronic depression and emotional instability. Naturally, mental health objectives comprised a significant part of her case plan. Her caseworkers and counselors testified, however, that she did not consistently keep her appointments and had not completed this objective by the time of the hearing. They further testified that Virginia's pattern of missing appointments, which she attributed to personal crises, oversleeping, and sickness, caused her to run out of medication repeatedly. The absence of medication resulted in severe agitation.
 {¶ 11} While the children were in the custody of MCCS, Virginia attempted to commit suicide by cutting her wrists, which resulted in hospitalization for a week. Moreover, during this same period, Z.R. was diagnosed as having numerous special needs, generally characterized as "pervasive developmental disorder." To treat this disorder, Z.R. received speech therapy, physical and occupational therapy, and play therapy. S.R. also attended speech therapy. Although Virginia was encouraged to attend the therapy sessions, she did so only sporadically.
 {¶ 12} Virginia completed parenting classes as required by her case plan, but she did not consistently visit with the children. She had attended only one-fifth of her scheduled visits in the three months preceding the hearing. She also missed appointments for vocational rehabilitation, which were tied to her case plan requirement that she obtain an income sufficient to support the children. Virginia had been evicted from at least one residence, and she was behind on her rent at another residence at the time of the hearing.
 {¶ 13} Virginia had partially complied with her case plan objective related to domestic violence. She had completed domestic violence classes, but when her abusive relationship with her husband continued, the case plan was modified to require her attendance at a domestic violence support group. She did not satisfy this requirement.
 {¶ 14} In addition to the extensive findings related to the case plan, the trial court found that Z.R. and S.R. had been placed in foster care at a very young age and had formed a significant bond with the foster mother. It further found that the children were adoptable and that the foster family was interested in adopting them. The trial court concluded that Virginia's lack of mental stability and consistency of treatment could result in a harmful situation for the children and that the foster family provided the consistent and caring environment that the children needed. Based on these factors, the court concluded that it was in the best interests of Z.R. and S.R. for permanent custody to be granted to MCCS.
 {¶ 15} It was undisputed that Z.R. and S.R. had been in the custody of MCCS for more than twelve of the previous twenty-two months when MCCS sought permanent custody. Moreover, the trial court's determination that it was in the best interests of Z.R. and S.R. to award custody to MCCS was supported by clear and convincing evidence. Although we are sympathetic to the fact that Virginia's chronic depression and emotional instability made many aspects of her life more difficult, including the completion of her case plan objectives, this fact also calls into question her ability to deal with the demands of young children, especially ones with special needs. The best interests of Z.R. and S.R. will clearly be served by a more stable environment.
 {¶ 16} J.R. had not been in the custody of MCCS for twelve or more months of a consecutive twenty-two month period when MCCS sought permanent custody because she was born during the pendency of the proceedings involving her siblings. As such, her case was determined pursuant to R.C. 2151.414(E). R.C. 2151.414(E) provides that the court may grant permanent custody to MCCS if it finds, by clear and convincing evidence, that the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parent, for any of the specified reasons. The trial court relied on the following reasons:
 {¶ 17} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents * * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home * * *.
 {¶ 18} "(2) Chronic mental illness [or] chronic emotional illness * * * is so severe that it make the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *.
 {¶ 19} "* * *
 {¶ 20} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
 {¶ 21} * * *
 {¶ 22} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 23} "* * *
 {¶ 24} "(16) Any other factor the court considers relevant."
 {¶ 25} For the reasons discussed above with respect to Z.R. and S.R., the trial court also reasonably concluded that custody of J.R. should be granted to MCCS pursuant to R.C. 2151.414(E). Virginia failed to remedy the conditions that caused the removal of her children from her home, particularly the concerns regarding her mental and emotional health, for which she had sought professional assistance and medication sporadically. MCCS had established by clear and convincing evidence that Virginia was unable to provide an adequate permanent home for J.R. at the time of the hearing and likely would be unable to do so in the year following the hearing. The evidence also demonstrated a lack of commitment toward the children by failing to visit them regularly or to participate in their therapies. Although we are not convinced that Virginia was unwilling to prevent J.R. from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect, as required by R.C. 2151.414(E), the court could have reasonably concluded that she was unable to do so, which would have been another relevant factor. See R.C. 2151.414(E)(16). In any event, the trial court's findings with respect to the other factors it relied on are supported by clear and convincing evidence and justify its decision to award permanent custody to MCCS.
 {¶ 26} Clear and convincing evidence supported the trial court's determination that permanent custody of Z.R., S.R., and J.R. should be awarded to MCCS. As such, we reject Virginia's arguments that the trial cout's decisions were against the manifest weight of the evidence.
 {¶ 27} The first and second assignments of error are overruled.
 {¶ 28} "III. THE TRIAL COURT ERRED IN FAILING TO APPOINT AN ATTORNEY FOR THE [CHILDREN] WHEN REQUESTED BY THE GUARDIAN AD LITEM."
 {¶ 29} Virginia claims that her children, Z.R. and S.R., were entitled to representation by an attorney, other than the guardian ad litem, in the proceedings before the juvenile court. She relies on In reWilliams, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110; R.C. 2151.235; and Juv.R. 2(Y) and 4(A). The state responds that the supreme court's holding in Williams that children subject to a proceeding for the termination of parental rights are entitled to an attorney, separate from the guardian ad litem, applies only if the circumstances warrant such an appointment and that, under the circumstances presented in this case, the appointment of an attorney for the children was unnecessary.
 {¶ 30} Williams involved a certified conflict between a case from this district and cases from other appellate districts with divergent holdings as to whether a child is a "party" to cases involving the termination of parental rights. In reviewing this issue, the supreme court examined the interplay between R.C. 2151.352, Juv.R. 4(A), and Juv.R. 2(Y). R.C. 2151.352 requires the appointment of an attorney for a child "not represented by the child's parent, guardian, or custodian," or if a conflict of interest exists among those parties. While noting that Juv.R. 4(A) also provides that every party has a right to an attorney in juvenile court proceedings, the supreme court observed that the right to counsel in juvenile proceedings "emanates from R.C.2151.352, not Juv.R. 4(A)."Williams at ¶ 15, citing State ex rel.Asberry v. Payne (1998), 82 Ohio St.3d 44, 46, 693 N.E.2d 794. The court further noted that Juv.R. 2(Y) "provides significant indication" that children in permanent custody hearings are entitled to appointment of counsel. However, the supreme court held that juvenile courts "should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." The court recognized that the guardian ad litem can sometimes serve a dual role as guardian ad litem and the child's attorney, provided there has been an express dual appointment by the juvenile court and so long as the guardian ad litem's recommendation does not conflict with child's wishes. Where such a conflict exists, independent counsel would be required. Id at ¶ 17-18.
 {¶ 31} Because Williams requires the juvenile court to consider the facts of each case in determining whether an attorney must be appointed for a child, we find the facts of that case to be instructive. InWilliams, two children were involved. The older child was 6 years old at the time of the permanent custody hearing, and he had been returned to the mother's custody (under the agency's supervision) during the pendency of the proceedings. The younger child had not been returned to the mother's custody. On appeal from the juvenile court's first order granting permanent custody to children services, the court of appeals held that the juvenile court "had erred in failing to consider whether [the older child] was entitled to counsel to represent his interests." The court gave significant weight to the fact that the older child had "repeatedly expressed a desire to remain with his mother," which conflicted with the guardian ad litem's recommendation that the motion for permanent custody be granted. Id. at ¶ 6.
 {¶ 32} On remand, the juvenile court appointed an attorney for the limited purpose of identifying the children's opinions with respect to permanent custody. The attorney's filing was "little more than a statement indicating [the older child's] desire to live with his mother * * * and a statement by the attorney that, due to [the younger child's] age, the attorney was unable to determine her wishes." The juvenile court then concluded, without holding a hearing, that there was no need to appoint counsel to fully represent the children's interests. Id. at ¶ 7. The mother again appealed, and the court of appeals held that the juvenile court had erred by failing to hold a hearing on whether the older child was entitled to representation by independent counsel. Id. at ¶ 8. It did not require further consideration of whether the younger child was entitled to an attorney. The supreme court affirmed the appellate court on the issue certified for review, holding that children who are the subject of a motion to terminate parental rights are "parties" to that proceeding and are entitled to the appointment of counsel if their interests conflict with those of the other parties. Id. at ¶ 29.
 {¶ 33} Based on the supreme court's holding in Williams, especially its approval of the appellate court's limited order to appoint an attorney only for the older child who had expressed an opinion with respect to his placement, we believe that the trial court acted reasonably in refusing to appoint an attorney for Z.R. and S.R. in this case. Both children were removed from the mother's home at a very young age, and they had had limited, sporadic visitation with their mother thereafter. Although the guardian ad litem's motion for appointment of an attorney indicated that "there may exist a conflict between what the Guardian believes is in the children's best interest and what the children may want to see happen in this case," there was no indication in the record that either child had expressed a desire to remain with the mother. In fact, the evidence showed that they were very bonded to their foster mother and sometimes called her "mommy." In the absence of any evidence of a desire on the part of the children to be returned to their mother's custody, we simply cannot conclude that the trial court erred in refusing to appoint independent counsel.
 {¶ 34} The guardian ad litem for Z.R. and S.R. was appointed in the dual role of guardian ad litem and attorney for the children. Based on the circumstances presented here, there is no basis to conclude that a conflict existed between the opinion of the guardian ad litem and the desires of the children. Accordingly, there is no basis to conclude that the trial court abused its discretion in refusing to appoint an attorney for Z.R. and S.R.
 {¶ 35} The third assignment of error is overruled.
 {¶ 36} "IV. THE TRIAL COURT ERRED IN FAILING TO CONSIDER A PLANNED PERMANENT LIVING ARRANGEMENT (PPLA) FOR THE CHILDREN UNDER THE CIRCUMSTANCES OF THIS CASE."
 {¶ 37} According to Virginia, the trial court considered only two dispositional options: returning the children to her custody and granting permanent custody to MCCS. She asserts that the court erred in failing to consider a third option, a permanent planned living arrangement ("PPLA"), which would have allowed the children to remain together with the foster family, but would have given her additional time to work toward reunification. The state contends that a trial court may not consider a PPLA if the agency does not request that placement option.
 {¶ 38} We disagree with the state's assertion that the trial court could not have considered a PPLA in the absence of a request from MCCS for such a placement. We have previously held that the court may consider, sua sponte, the option of a PPLA even when the agency did not request it. See In re Priser, Montgomery App. No. 19861, 2004-Ohio-1315;In re Lane (February 9, 2001), Montgomery App. No. 18467. However, the trial court acted within its discretion in choosing not to consider a PPLA under the circumstances presented in this case. In particular, the children were quite young, the trial court found that there was a reasonable expectation that the children would be adopted, and the foster family had expressed an interest in adopting all three children. Under these circumstances, the trial court reasonably concluded that the children's best interests were served by granting permanent custody to MCCS rather than by implementing a PPLA.
 {¶ 39} The fourth assignment of error is overruled.
 {¶ 40} The judgments of the trial court will be affirmed.
FAIN, J., and GRADY, J., concur.