---

### In re K.W.

[Cite as *In re K.W.*, 185 Ohio App.3d 629, 2010-Ohio-29.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23407.

Decided Jan. 5, 2010.

Mathias Heck, Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellee, Montgomery County Children Services.

Christopher B. Epley, for appellant, Mother.

FROELICH, Judge.

{¶ 1} Mother appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which found that it was in her daughter, K.W.'s, best interest to grant permanent custody to Montgomery County Children Services ("MCCS"). The trial court had previously concluded that MCCS was not required to make reasonable efforts to reunify Mother and K.W. because three of Mother's other children had been involuntarily placed in the permanent custody of the agency.

{¶ 2} R.C. 2151.419(A)(2)(e), by which MCCS was relieved of its usual burden to make reasonable efforts at reunification because Mother had other children who had been involuntarily placed in the permanent custody of the agency, is not unconstitutional on its face or as applied to Mother. MCCS was still required to prove, by clear and convincing evidence, that permanent custody was in the best interest of K.W., and the state did present sufficient evidence to support this finding. Mother consented, through her attorney, to the dependency findings in 2007; moreover, she waived her argument that this finding was improper by failing to file timely objections and to appeal from that decision, which was a final, appealable order. For these reasons, the judgment awarding permanent custody to MCCS will be affirmed.

I

{¶ 3} K.W. was born on February 27, 2007. On March 2, 2007, MCCS filed a complaint alleging that K.W. was a neglected and dependent child due to Mother's mental-health issues and substance abuse, including her use of crack cocaine during her pregnancy, and Father's drug use and lack of independent housing. The complaint also alleged that Mother had three other children who had been previously adjudicated dependent by the trial court and had been placed in the permanent custody of MCCS in 2006. On March 7, 2007, the complaint was amended to include an additional allegation that K.W. was neglected and dependent because Mother had not received adequate prenatal care. The magistrate granted interim temporary custody to MCCS.

{¶ 4} On May 9, 2007, the trial court conducted a hearing on the allegation of dependency and neglect and on temporary custody of K.W. K.W.'s father attended the hearing with his attorney. K.W.'s mother had received notice of the hearing, but did not attend; her attorney was present. The attorneys for both parents stated that the parents would agree to a finding of dependency if the state dropped the allegation of neglect. Father also agreed to place K.W. in the temporary custody of MCCS. Mother's attorney stated that based on her conversations with Mother, she (the attorney) could agree to the dependency

finding but could not agree to temporary custody on Mother's behalf. Thus, the state presented evidence related only to Mother on the issue of temporary custody.

{¶ 5} The state's evidence at the hearing established that no appropriate relatives had been identified who could care for K.W. and that a case plan had been developed. With respect to Mother, the case-plan objectives were to obtain income and housing; to get mental health, drug, alcohol, and parenting assessments; to follow the recommendations that resulted from the assessments; and to maintain visitation with K.W. By the hearing on temporary custody, Mother had completed some of the assessments and had completed some applications for housing and employment, but she had not fully addressed the mental-health, substance-abuse, housing, and income issues. The guardian ad litem recommended that the court grant temporary custody to MCCS. On March 14, 2007, the magistrate awarded temporary custody of K.W. to MCCS. Mother did not file objections to the magistrate's decision.

{¶ 6} On October 15, 2007, the state filed a motion, pursuant to R.C. 2151.419(A)(2), to bypass the statutory requirement that MCCS make "reasonable efforts to return this child to the child's home with her Mother," on the basis that Mother had had her parental rights involuntarily terminated with respect to one or more other children. On October 31, 2007, the state filed a motion for permanent custody of K.W.

{¶ 7} On December 4, 2007, the magistrate held a hearing on the motion to bypass reunification efforts. Mother and Father were present with counsel. The state presented the caseworker's testimony that Mother had three other children who had been involuntarily removed from her custody. The same caseworker presented the judgment entries granting permanent custody in those three cases. Mother's only response to the state's evidence was to argue that the state had not met its burden to show that Mother was the same person involved in the prior cases. The magistrate in K.W.'s case had presided over the siblings' cases and, when presented with the judgment entries, the magistrate indicated that he remembered Mother and those cases. At the end of the hearing, the magistrate ordered Mother and Father to be tested for drugs. Both tested positive for cocaine and marijuana.

{¶ 8} On January 31, 2008, the magistrate filed a decision granting the motion to bypass reunification efforts, which concluded that pursuant to R.C. 2151.011(C) and 2151.419(A)(2)(e), MCCS was "not required to make reasonable efforts to eliminate the continued removal of the child from the child's home with the parent and return the child to the home." The trial court adopted the decision the same day. Neither Mother nor Father filed objections.

{¶ 9} On February 21, 2008, the magistrate held a hearing on the motion for permanent custody of K.W., at which both mother and father were present with counsel. The state presented evidence that Mother had failed to make significant progress on any of her case-plan objectives. On March 12, 2008, the magistrate granted the motion for permanent custody. Mother subsequently filed a series of objections, which challenged the magistrate's decisions finding that K.W. was dependent, granting temporary custody to MCCS, allowing MCCS to bypass reasonable efforts to return K.W., and granting permanent custody of K.W. to MCCS.

{¶ 10} The trial court concluded that Mother's objections to the decisions finding K.W. to be dependent, awarding temporary custody to MCCS, and permitting MCCS to bypass reunification efforts were untimely. It also rejected Mother's argument that R.C. 2151.419(A)(2), which provides for the bypass, is unconstitutional. The court further found that every aspect of Mother's case plan was incomplete and that K.W. could not be returned to her Mother within a reasonable period of time and that Mother had shown a lack of commitment toward K.W. Thus, the court adopted the magistrate's decision and found, by clear and convincing evidence, that K.W.'s best interest would be served by granting permanent custody to MCCS.

{¶ 11} Mother raises one assignment of error on appeal. Father is not a party to this appeal.

## II

{¶ 12} The assignment of error, which incorporates three distinct arguments, states:

{¶ 13} "The trial court erred to the prejudice of appellant mother in violation of R.C. 2151.414 and the U.S. and Ohio constitutions when it terminated mother's parental rights by granting permanent custody to Montgomery County Children's Services less than one year after her daughter's birth."

{¶ 14} The United States Supreme Court has recognized that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized" by the court. *Troxel v. Granville* (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. Parents who are suitable persons have a "paramount" right to the custody of their minor children. *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 369 N.E.2d 1047.

{¶ 15} In a proceeding for the termination of parental rights, all the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.*, Montgomery App. No. 21749, 2007-Ohio-186, 2007 WL 127729, at ¶ 9. However, the court's decision to terminate parental rights will not

be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. *In re Forrest S.* (1995), 102 Ohio App.3d 338, 344–345, 657 N.E.2d 307. We review the trial court's judgment for an abuse of discretion. See *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 48 (applying abuse-of-discretion standard to trial court's findings under R.C. 2151.414).

{¶ 16} Mother raises three arguments, which we will address in the order that facilitates our discussion. First, she argues that the trial court's finding that K.W. was a dependent child was against the manifest weight of the evidence. The trial court made this finding in May, 2007, and Mother did not object until July 2008. The state contends that Mother waived her right to object to that decision because she did not object within 14 days, as required by Juv.R. 40(D)(3)(b)(i). The state also points out that Mother's attorney agreed to this finding.

{¶ 17} At the hearing on MCCS's motion for temporary custody based on dependency and neglect, Mother's attorney stated that her client would agree to a finding of dependency if the state dropped the allegation of neglect. The attorney's statements to the court suggest that she had discussed this specific issue with Mother, especially because the attorney indicated that her client would not agree to a temporary-custody finding. When temporary custody was ordered, Mother did not file timely objections. More importantly, a dependency adjudication followed by a disposition awarding or continuing temporary custody of a child to a public services agency constitutes a final, appealable order. *In re Adams,* 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, at ¶ 38; *In re Murray* (1990), 52 Ohio St.3d 155, 159, 556 N.E.2d 1169; *In re Smith* (1982), 7 Ohio App.3d 75, 77, 7 OBR 88, 454 N.E.2d 171. Thus, the trial court's finding of dependency in May 2007 was a final, appealable order, and Mother did not appeal from this judgment. For all of these reasons, we reject Mother's untimely argument that the trial court erred either in finding that K.W. was a dependent child or in awarding temporary custody.

{¶ 18} Second, Mother argues that the trial court's finding that it was in K.W.'s best interest to grant permanent custody to MCCS was against the manifest weight of the evidence.

{¶ 19} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. R.C. 2151.414(B)(1)(a) provides that the court may grant permanent custody of a child to a children services agency if the court determines, by clear and convincing

evidence, that it is in the best interest of the child to grant permanent custody of the child to the children services agency and that the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents. We turn to Mother's arguments with this standard in mind.

{¶ 20} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, * * * and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child, * * *; [and](4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

{¶ 21} In assessing K.W.'s best interest, the trial court relied heavily on Mother's failure to meet her case-plan objectives. These objectives were to obtain mental health, substance abuse, and parenting assessments; to follow the recommendations that resulted from these assessments; to maintain stable housing and income; and to maintain regular visitation with K.W. MCCS presented extensive evidence, primarily through the testimony of its caseworker, Kristin Windhorst, that Mother had failed to meet her case-plan objectives or to make reasonable efforts toward that goal. Although Mother had completed the initial assessments for mental-health and substance-abuse intervention, she had stopped taking medication that was prescribed for her bipolar disorder because she did not like how it made her feel. Mother also did not follow through with treatment for her cocaine dependency, which was identified during her assessments. In fact, Mother tested positive for drugs on one of the days that she appeared in court in this case, and she had been incarcerated on a probation violation during the pendency of these proceedings after she was arrested for possession. Her incarceration prevented her from visiting with K.W. for a couple of months, but even when she was not in jail, the caseworker described Mother's visits as "sporadic."

{¶ 22} In April 2007, and several times thereafter, MCCS referred Mother to Dr. Cornell for parenting and psychological assessments, but as of January 2008, Mother had not completed an appointment. During her last contact with the caseworker prior to the permanent-custody hearing, Mother claimed to have an appointment scheduled with Dr. Cornell. Mother had placed her name on a waiting list with the Dayton Metropolitan Housing Authority, but had not obtained housing at the time of the hearing. Mother was staying with a friend. Mother had briefly held a job at Frisch's, but she quit after a few weeks because

she was unhappy with her schedule. She was unemployed at the time of the hearing.

{¶ 23} Windhorst testified that she had reviewed the case plan with Mother monthly from March 2007 though the time of the hearing and that Mother had understood the case-plan objectives, but that Mother had made little progress toward achieving those goals. She also stated that she had encouraged Mother to provide MCCS with the names of relatives who might be able to care for K.W.; although Mother claimed that relatives were willing to help, she never provided Windhorst with the names of these relatives. With respect to K.W., Windhorst testified that she was doing well in foster care and had bonded with her foster family. The foster family was interested in adopting K.W.

{¶ 24} The trial court found that Mother's case plan was incomplete and that K.W. could not be reunited with her within a reasonable period of time, despite the fact that "MCCS provided more than adequate services." The court also found that Mother had shown a lack of commitment toward the child. These findings were supported by the record. Although Mother claims that she was making progress on her case plan, the evidence refutes this claim. Any progress that Mother had made was minimal, at best. Based on the evidence presented, the trial court did not abuse its discretion in concluding that granting permanent custody of K.W. to MCCS was in K.W.'s best interest and that she could not or should not be reunified with Mother within a reasonable period of time.

{¶ 25} Third, Mother argues that R.C. 2151.419(A)(2)(e) is unconstitutional on its face and as applied to her. R.C. 2151.419(A)(1) states that at a hearing on a motion for permanent custody, the children services agency has the burden of proving that it has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home ("reunification efforts"). R.C. 2151.419(A)(2) sets forth various circumstances in which a children services agency is not required to make reunification efforts. R.C. 2151.419(A)(2)(e) provides that the agency is not required to make reunification efforts if "[t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child." MCCS relied on this provision in its motion to bypass reunification efforts, and the trial court agreed that such efforts were not required in this case.

{¶ 26} Mother claimed that R.C. 2151.419(A) is unconstitutional on its face because parenting is a fundamental right, and the bypass provision relieved the agency of its duty to make reasonable efforts to return K.W. to her parents. Mother claimed that R.C. 2151.419(A) permitted MCCS to "quit doing its job" and stop working with her.

{¶ 27} Statutes enjoy a strong presumption of constitutionality. *State v. Warren*, 118 Ohio St.3d 200, 2008-Ohio-2011, 887 N.E.2d 1145, at ¶ 21. "A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 29; *State v. Collier*, 62 Ohio St.3d at 269, 581 N.E.2d 552." Id.

{¶ 28} R.C. 2151.419(A)(2) establishes objective factors that alleviate the general requirement, set forth in R.C. 2151.219(A)(1), that an agency attempt to reunify a child with his or her parents before seeking permanent custody. The prior involuntary removal of a child from the parents' custody is one of these factors. R.C. 2151.419(A)(2)(e). The court is also required to consider the prior involuntary termination of parental rights in determining whether a child can or should be placed with a parent within a reasonable period of time. R.C. 2151.414(E)(11). This factor is rationally related to the need for and likely success of reunification efforts. *In re Baby Girl Elliott*, Butler App. No. CA2003–10–256, 2004-Ohio-3539, 2004 WL 1485858, at ¶ 49–51 ("The circumstances surrounding a prior termination of a parent's parental rights are highly relevant in a hearing to terminate the rights of the same parent regarding another child"). Pursuant to R.C. 2151.414(E)(11), the parent who has had parental rights involuntarily terminated may prove, by clear and convincing evidence, that the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child, notwithstanding the prior termination. The legislature's concern for children who are born to parents who have had other children involuntarily removed from their custody is understandable and justified.

{¶ 29} The state is nonetheless required to prove, by clear and convincing evidence, that granting permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1)(a). The need for this showing in proceedings for permanent custody protects a parent's fundamental rights. In our view, the state's ability to forgo reunification efforts in this narrowly drawn circumstance does not violate that parent's fundamental rights, and R.C. 2151.419(A)(2)(e) is not unconstitutional on its face.

{¶ 30} The elimination of the need for reunification efforts also was not unconstitutional as applied to Mother. Mother claims that she lost custody of K.W. based on her past conduct and not "due to anything that she did or did not do" regarding K.W.; however, the evidence did not support this claim.

{¶ 31} MCCS worked with Mother for several months on a case plan and attempted to provide her with services which would promote reunification. Mother had uncontrolled mental-health and substance-abuse issues that interfered with her ability to parent K.W., and she did not take steps to address these

problems while K.W. was in the temporary custody of MCCS. Moreover, as noted above, R.C. 2151.419(A)(2)(e) relieved the state from showing that it had made reasonable reunification efforts (even though the state apparently did make such efforts), but it did not relieve the state of its burden to prove, by clear and convincing evidence, that K.W.'s best interest would be served by granting permanent custody to MCCS. In other words, R.C. 2151.419(A)(2)(e) did not so fundamentally alter the state's burden of proof as to violate Mother's constitutional rights.

{¶ 32} Mother's assignment of error is overruled.

### III

{¶ 33} The judgment of the trial court will be affirmed.

Judgment affirmed.

BROGAN and FAIN, JJ., concur.