[Cite as *In re L.W.*, 2014-Ohio-4507.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: L.W.                                          :

                                                    :           C.A. CASE NO.     26243

                                                    :           T.C. NO.     2011-3477

                                                    :           (Civil appeal from Common
                                                                  Pleas Court, JuvenileDivision)

                                                    :

                                                    :

                                          . . . . . . . . . .

## **O P I N I O N**

Rendered on the _____10th_____ day of _____October_____, 2014.

. . . . . . . . . .

TIFFANY C. ALLEN, Atty. Reg. No. 0089369, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Appellee Montgomery County Children Services

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 W. Second Street, Suite 400, Dayton, Ohio 45402
        Attorney for Appellant Mother

CHRISTOPHER WESNER, Atty. Reg. No. 0082699, 22 N. Market Street, Suite C, P. O. Box 920, Troy, Ohio 45373
        Attorney for Appellee Father

JEFFREY D. LIVINGSTON, Atty. Reg. No. 0062466, 120 W. Second Street, Suite 2000, Dayton, Ohio 45402

Guardian Ad Litem

. . . . . . . . . .

DONOVAN, J.

{¶ 1}     Petitioner-appellant S.W. (hereinafter "Mother") appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, overruling her objections and adopting the decision of the magistrate granting permanent custody of her infant son, L.W., to Montgomery County Children Services (hereinafter "MCCS").   Mother filed a timely notice of appeal with this Court on May 22, 2014.

{¶ 2}     L.W. was born on April 28, 2011.   On May 2, 2011, MCCS filed a complaint alleging that L.W. was abused and dependent.   Specifically, Mother and L.W. tested positive for opiates at the time of the child's birth.[1]   L.W. was found to exhibit signs of opiate addiction.   On the same day as the complaint was filed, the juvenile court granted an ex parte order of interim temporary custody to MCCS.   On June 20, 2011, L.W. was adjudicated dependent in light of Mother's continuing substance abuse issues and lack of stable housing, and temporary custody was granted to MCCS.   The juvenile court granted MCCS a first extension of temporary custody on June 11, 2012.   A second extension of temporary custody was granted on December 24, 2012.

---

[1]We note that the type of opiate found in Mother and L.W.'s systems was methadone that had been prescribed for and administered to her during the pregnancy.

{¶ 3} On April 17, 2013, MCCS filed a motion for permanent custody of L.W. A hearing was held before the magistrate on July 26, 2013, and September 25, 2013.[2] At the hearing, evidence was adduced that at the time L.W. was placed in the temporary custody of MCCS, Mother had already given birth to four other children who were removed from her care in light of ongoing issues with substance abuse and a lack of stable housing. Mother's four other children had been placed in the care of A.W., the paternal grandmother. Mother was unable to reunify with the other children because of her ongoing substance abuse and lack of stable housing.

{¶ 4} Kelli Hamilton, a caseworker at MCCS, testified that she had been involved with Mother since 2006, and she has a history of drug abuse. Hamilton testified that Mother had participated in several drug treatment programs, including CAM, Crisis Care, Nova House, and Women's Recovery, but had not successfully completed any of the programs. Additional testimony was adduced that Mother lived with L.W.'s father who also had ongoing substance abuse problems and a history of three convictions for drug possession, the last as recent as May of 2009. Mother's second caseworker, Erika Respress, testified that MCCS was concerned that Father's presence would be detrimental for L.W. because of his destructive behavior and lack of stability. In the report filed by the Guardian Ad Litem (GAL), Mother was quoted as stating that Father's inability to stop using drugs "triggers her ongoing use."

{¶ 5} Hamilton testified that a case plan was developed for Mother with the

_____

[2] L.W.'s biological father was also present and represented by counsel at the hearing before the magistrate. Father filed objections to the magistrate's decision that were ultimately overruled. Father, however, is not involved in the instant appeal.

primary goal of reunification with L.W. Mother's case plan objectives were to complete drug and alcohol treatment, maintain stable housing, maintain income, and attend classes to learn about L.W.'s drug dependency and how to care for him. The evidence adduced at the hearing established that while she was able to maintain stable housing and income, Mother failed to complete the drug and alcohol treatment program at Project Cure. Mother also failed to attend any of the classes addressing L.W.'s specialized medical care. Although she had one three-month period where all of her urine screens were negative, Mother relapsed several times and tested positive for opiates. In fact, Mother testified that she was taking Vicodin for pain management even though she did not have a prescription.

{¶ 6} On November 5, 2013, the magistrate issued a decision granting permanent custody to MCCS. Mother filed objections to the magistrate's decision on November 19, 2013. On January 16, 2014, Mother filed supplemental objections to the magistrate's decision. The juvenile court subsequently overruled Mother's objections and adopted the magistrate's decision in a judgment issued on April 25, 2014.

{¶ 7} It is from this judgment that Mother now appeals.

{¶ 8} Mother's sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY BECAUSE THERE WAS NOT CLEAR AND CONVINCING EVIDENCE THAT GRANTING PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD."

{¶ 10} In her sole assignment, Mother contends that the juvenile court erred when it adopted the decision of the magistrate granting permanent custody of L.W. to MCCS.

Specifically, Mother argues that the evidence adduced at the hearing established that she had substantially completed all of her case plan objectives and was "in the midst of ongoing services" to treat her substance abuse problems.

{¶ 11} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. *In re K.M.,* 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 8, citing R.C. 2151.414(B)(1).

{¶ 12} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the

factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 13}   Mother does not dispute that at the time of the hearing, L.W. had been in the temporary custody of the Agency for over twelve months of a consecutive twenty-two month period.   L.W. has resided at the same foster placement since he was born and released from the hospital.   The evidence supports a finding that L.W. is bonded with his foster family. The evidence also established that L.W. is adoptable, and that at the time of the hearing, MCCS found a potential adoptive family for him.

{¶ 14}   Although L.W. is too young to express his wishes with regard to custody, the GAL indicated that the child's best interests would be served by granting custody to MCCS. Mother expresses the desire to retain custody of her son, but she failed to comply with the terms of her case plan, which was designed to aid her in rectifying the problems that resulted in MCCS's intervention.   Specifically, the record establishes that while Mother maintained stable housing and income, she has a significant, ongoing substance abuse problem that she failed to properly address.   Mother admitted to taking Vicodin, a powerful pain medication, without a prescription, and she relapsed into drug use numerous times during her treatment. As a result, Mother has failed to complete drug and alcohol treatment at Project Cure. Lastly, Mother failed to attend any of the educational classes designed to help her address L.W.'s medical care which was necessary due to his opiate addiction at birth.

{¶ 15}   A trial court's decision on termination "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established."   (Citations omitted) *In*

*re A.U.,* 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. Furthermore, "issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re A.J.S.,* 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 22. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *In re J.Y.,* 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33.

{¶ 16}  Our review of the record, transcript, and exhibits establishes that there is clear and convincing evidence which supports the juvenile court's decision finding that the statutory elements for termination under R.C. 2151.414(B) have been satisfied. Thus, the juvenile court did not err when it adopted the decision of the magistrate awarding permanent custody of L.W. to MCCS.

{¶ 17}  Mother's sole assignment of error is overruled.

{¶ 18}  Mother's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., dissenting.

{¶ 19}  I disagree that the record demonstrates, by clear and convincing evidence, that granting permanent custody of L.W. to MCCS was in L.W.'s best interest as that term is defined by the statutes.

{¶ 20}     In Ohio, a trial court is authorized to terminate parental rights and to grant permanent custody to a children services agency in several enumerated circumstances. As relevant to this appeal, these circumstances include a finding, by clear and convincing evidence, that permanent custody is in a child's best interest, coupled with a finding that the child has been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period.  R.C. 2151.414(B); *In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14, citing *In re K.M.*, 8th Dist. Cuyahoga No. 98545, 2012-Ohio-6010, ¶ 8.  The burden of proof is on the children services agency. *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14.

{¶ 21}     R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.  These factors include the parents' criminal records, if any, including any offenses against children and other mistreatment or abandonment of children, and the existence of any siblings with respect to which the parents' parental rights have been involuntarily terminated.

{¶ 22}     The burden of clear and convincing evidence "is that measure or degree of

proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 23}** Extensive testimony was presented at the permanent custody hearings regarding "the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child." R.C. 2151.414(D)(1). L.W. was removed at birth after he and Mother tested positive for Methadone, which Mother had been prescribed by Project Cure during her pregnancy. At the time L.W. was placed in the temporary custody of MCCS, Mother had already given birth to four other children. Legal custody of Mother's four older children had been given to the children's paternal grandmother, with one year of protective supervision by MCCS. (Protective supervision expired on April 27, 2011, the day before L.W. was born.) L.W.'s parents remained involved with and frequently see their older children.

**{¶ 24}** Kelli Hamilton, the family's caseworker at the time of L.W.'s removal, testified that L.W.'s parents had visitation with him twice per week for three hours a day. Hamilton stated that the visits "went very well" and that "[t]here was a definite bond and attachment between [L.W.] and both parents." Hamilton testified that there were "never any noted concerns with parenting, basic parenting skills. They were always very appropriate with [L.W.]. Foster mom never had any concerns after visits." Other than the

30 days that Mother was receiving residential treatment at Project Cure, Mother consistently visited with L.W. Many times, L.W.'s siblings would also participate in visitation. Erika Respress, the family's caseworker since September 2012, stated that Mother continued to consistently visit with L.W., that L.W. had bonded with his parents and siblings, and that no concerns were raised during those visits. The Guardian Ad Litem ("GAL") also recognized the bond between L.W. and his parents and siblings.

{¶ 25} Respress testified that L.W. was an "adoptable child" and that if MCCS obtained permanent custody, L.W. would be transferred to the adoption unit and placed in a potential adopters' home as a foster-to-adopt placement. The potential adoptive family that MCCS had identified was not the foster family, but friends of the foster mother. There was no testimony about whether L.W. had ever interacted with the potential foster family. Respress indicated that L.W. would be "cut off" from his parents and siblings if he were adopted.

{¶ 26} Turning to the custodial history of L.W. and his need for a legally secure permanent placement, R.C. 2151.414(D)(3) & (4), L.W. had been in temporary custody since shortly after his birth, and the juvenile court could not grant another extension of temporary custody. MCCS had not identified any relatives who are willing and able to take L.W. I agree that this factor weighs in favor of granting permanent custody to MCCS.

{¶ 27} The evidence indicated that MCCS had ongoing concerns about Father's drug use. L.W.'s parents were married and lived together throughout their involvement with MCCS. Mother testified at the September hearing that Father had moved out due to the agency's concerns about his presence in the house. Respress testified that she did not

believe Mother's testimony, but there was no evidence to contradict it. It was undisputed that Mother has appropriate housing and income for L.W.

{¶ 28} Repress testified that Mother was supposed to take special classes to learn about L.W.'s "dietary needs [and] *possible* developmental or physical issues that he would have because of that drug addiction" (emphasis added), and she did not do so. The case plan provided that "[p]arents will learn about medical care necessitated by the baby's drug addiction and be able to meet their baby's medical needs during visitation." However, Respress testified that L.W. does not live in a treatment foster home and that he has "no special needs." There was no testimony that L.W. has any "developmental or physical issues" or that, since L.W.'s methadone withdrawal in the hospital after his birth, any additional medical care was necessitated by his positive methadone test at birth. Mother's failure to take classes has minimal weight.

{¶ 29} At the time of the permanent custody hearing, L.W. was two years old and was too young to express his wishes. R.C. 2151.414(D)(2). The July 2013 report filed by the Guardian Ad Litem identified drug use as the major issue in the case. He stated that Mother "was consistently testing positive for opiates in 2013 (as well as Methadone which is to be expected). One [of] the progress notes [from Project Cure] dated May 21, 2013 has Mother reporting that 'her husband has just been unsuccessfully dosed out of the clinic and triggers her ongoing use.'" The GAL stated to the trial court at the September 2013 hearing that this was a "sad case" and that the older children know L.W. The GAL reiterated that the "main issue during that whole time has been a drug issue, and there have been periods of times where both parents have maintained somewhat sobriety, but there's always been

relapses." He indicated that he did not believe that L.W. could be reunified with his parents in a reasonable amount of time, and he recommended permanent custody to MCCS.

{¶ 30} The crux of the magistrate's and trial court's decisions was that Mother had a significant substance abuse problem that has not been addressed, and that this problem was severe enough to interfere with her ability to care for L.W. MCCS emphasized, and the juvenile court found, that Mother had been involved with MCCS since 2006, that Mother had several prior attempts at sobriety, and that she had suffered relapses on several occasions. MCCS presented testimony of Mother's drug abuse history prior to L.W.'s birth.

{¶ 31} The record reflects that MCCS became involved with Mother in 2006 due to her addiction to heroin. Although the record states that Mother repeatedly tested positive for "opiates," any positive tests since L.W.'s birth appear to be for Methadone and/or Vicodin. MCCS refers to Mother's repeated relapses, but there was no evidence at the hearing that Mother has tested positive for heroin or other illegal drugs since L.W.'s birth.

{¶ 32} The evidence at the hearings regarding Mother's drug use since L.W.'s birth did not substantiate the trial court's conclusion that Mother continues to have a substantial drug abuse problem that affects her ability to parent L.W. According to the testimony, approximately two months before L.W.'s birth, Mother began outpatient substance abuse treatment at Project Cure, which specifically addresses opioid dependency, and she was prescribed methadone. According to Frank Wylie, an outpatient substance abuse counselor at Project Cure, Mother entered Project Cure's residential program in the beginning of September 2012. Wylie provided individual and group counseling sessions for her. Mother had no issues while she was in residential treatment. Mother has random drug

screens at least once per month as an active client; while Mother worked with Wylie, all of her screens were negative. The residential program is a 30-day program; Mother successfully completed the program and was transitioned to outpatient treatment.

**{¶ 33}** Outpatient treatment at Project Cure has four levels that must be completed before a client is successfully discharged. After the residential treatment, Mother was placed in level two. Wylie testified that Mother was "at least level two if not level three" at the time of the July 2013 hearing. Wylie stated that the program was "designed to be about two and half years" from "start to finish." Mother had not been out of the residential program long enough to be at level four. Hamilton further stated that Mother was in residential treatment and was no longer testing positive when Hamilton stopped being her caseworker.

**{¶ 34}** Respress testified that Mother has not used any illegal substances, but she admitted in April 2013 and June 2013 to taking Vicodin, without a prescription, for back pain. Respress stated that Mother has a ruptured disk. Mother was continuing to receive substance abuse treatment at Project Cure. Respress stated that she has been able to randomly drug screen Mother, and Mother has not "tested positive for anything that's caused concern." A laboratory report for Mother, dated April 2013, indicated that Mother tested positive for methadone; the results for other substances were negative. Mother testified that the only thing she "had touched in over three years" was Vicodin, which she takes to treat pain. There was no evidence that Mother's use of Vicodin for back pain, albeit without a prescription, impairs her ability to parent or her relationship with her son.

**{¶ 35}** As the Guardian Ad Litem opined, this is a "sad case"; there are most often

no clear-cut winners and losers in a permanent custody situation. Further, there may be facts and circumstances known to the investigators and case workers that never made their way to the record. However, based on the testimony presented at the permanent custody hearings, the exhibits presented at the hearings, and the Guardian Ad Litem report, I would conclude that the evidence does not support the termination of Mother's parental rights and the granting of permanent custody of L.W. to MCCS on the ground that permanent custody was in L.W.'s best interest.

. . . . . . . . . .

Copies mailed to:

Tiffany C. Allen
Lucas W. Wilder
Christopher Wesner
Jeffrey D. Livingston
Hon. Anthony Capizzi