[Cite as *In re J.A.*, 2020-Ohio-5354.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

IN THE MATTER OF: J.A. and D.T.

:
:
:    Appellate Case No. 2020-CA-31
:
:    Trial Court Case Nos. 2017-1163 and
:    2017-1164
:
:    (Appeal from Common Pleas Court-
:    Juvenile Division)
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of November, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Appellee, Clark County Dept. of Job & Family Services

ERIC M. SOMMER, Atty. Reg. No. 0066363, 202 North Limestone Street, Suite 250, Springfield, Ohio 45503
    Attorney for Appellant, Mother

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Mother appeals from a judgment of the Clark County Juvenile Court denying her request that legal custody of her two children, J.A. and D.T., be awarded to their maternal grandfather and awarding custody to Clark County Department of Job and Family Services (DJFS). We find no merit in her sole assignment of error, and we affirm the juvenile court's judgment.

## I.    Facts and Procedural History

**{¶ 2}** In November 2017, Mother took D.T., who was then two months old, to Springfield Regional Medical Center because the child had been vomiting. D.T. was transferred to Dayton Children's Hospital, where it was determined he had been shaken hard enough to cause subdural and subarachnoid hemorrhaging. In addition, D.T. suffered from malnutrition and torticollis, a condition that caused his head to tilt downward. Mother's other child, J.A., who was born in July 2016, was also malnourished. DJFS filed a dependency complaint regarding both children. The trial court granted DJFS temporary custody, and the children were placed with a foster family.

**{¶ 3}** In December 2017, Mother was indicted for felonious assault and endangering children. Following a guilty plea, she was sentenced to prison; she was expected to be released in May 2020. Thereafter, the children were adjudicated to be dependent.

**{¶ 4}** R.G., the children's maternal grandfather, was identified as a possible relative placement. Because R.G. and his wife, W.G., lived in Kentucky, DJFS asked the appropriate Kentucky child welfare agency to conduct a study on the suitability of such a placement. The Kentucky agency denied the placement because W.G. had a prior

criminal conviction for child abuse. It also determined that W.G. had been involved in at least two other substantiated cases of child abuse.

{¶ 5} In January 2019, DJFS filed a motion seeking permanent custody of the children. In April 2019, Mother filed a motion requesting that the court award legal custody of the children to her father, R.G. Three days prior to the scheduled disposition hearing, R.G. and W.G. filed a motion to intervene. They also filed a motion for temporary legal custody of the children. The motion to intervene was granted, and a hearing before a magistrate was conducted on May 9, 2019.

{¶ 6} Following the hearing, the magistrate denied the motion for legal custody filed by the maternal grandparents and Mother's motion for custody to the grandparents. The magistrate awarded permanent custody to DJFS. Mother filed objections to the magistrate's decision, which were overruled by the juvenile court. The juvenile court awarded permanent custody to DJFS. Mother appeals.

## II. Analysis

{¶ 7} The sole assignment of error asserted by Mother is as follows:

DOES A TRIAL COURT ERR IN GRANTING PERMANENT CUSTODY TO A PUBLIC CHILDRENS' SERVICES AGENCY, WHEN THERE IS A SUITABLE RELATIVE WHO IS READY, WILLING AND ABLE TO ACCEPT CUSTODY OF THE MINOR CHILDREN WHO ARE THE SUBJECT OF THE PERMANENT CUSTODY PROCEEDING?

{¶ 8} Mother contests the juvenile court's decision to deny R.G. and W.G. legal custody of the children and instead grant permanent custody to DJFS.

{¶ 9} We begin by noting that the State contends Mother has no standing to assert the rights of R.G. and W.G., as they did not file an appeal of the juvenile court's judgment. In support, the State cites *In re K.C.*, 2017-Ohio-8383, 99 N.E.3d 1061 (1st Dist.) for the proposition that "a parent has no standing to appeal an award of permanent custody and a denial of a relative's custody petition where the parent does not challenge the termination of her parental rights and the relative did not appeal the denial of her custody petition." *Id.* at ¶ 12.[1] However, this case is distinguishable, as Mother appeals from the denial of her own motion requesting that the maternal grandfather be granted legal custody of the children. *See In re S.F.*, 2d Dist. Montgomery No. 28606, 2020-Ohio-693, ¶ 51. Thus, Mother has standing to assert that the juvenile court erred by overruling her motion requesting that R.G. be granted custody of the children.

{¶ 10} Turning to the merits, we conclude that Mother's challenge to the juvenile court's judgment is without merit. First, the Interstate Compact for the Placement of Children ("ICPC"), as codified by R.C. 5103.20 thru 5103.237, precluded placement with the maternal grandparents. Second, because the record established that granting permanent custody to DJFS was in the best interest of the children, "legal custody to a relative necessarily is not." *In re S.F.*, 2d Dist. Montgomery 28606, 2020-Ohio-693, ¶ 52, citing *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 16 (8th Dist.).

{¶ 11} Ohio has adopted the ICPC, which is a compact among member states authorizing them to work together to ensure that children who are placed across state lines receive adequate protection and support services as though the placement was

---

[1] The State also cites *In re N.H. and N.T.*, 10th Dist. Franklin No. 10AP-620 and 10AP-621, 2017-Ohio-1491 and *In re A.W.*, 1st Dist. Hamilton No. C-120787, 2013-Ohio-909 as support for its argument.

made intrastate. *See* R.C. 5103.20. Because the maternal grandparents reside in Kentucky, the ICPC applied to this case.

{¶ 12} A purpose of the ICPC is to ensure that "[t]he appropriate authorities in a state where a child is to be placed * * * have [a] full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child[,]" and "[t]he proper authorities of the state from which the placement is made may obtain the most complete information * * * to evaluate a projected placement before it is made." R.C. 5103.23.

{¶ 13} To that end, no interstate placement can be made until the receiving state has performed an assessment and determined that the placement is both safe and suitable for the child and is in compliance with the applicable laws of the receiving state governing the placement of children therein. R.C. 5103.20. When the receiving state does not approve the placement, "the child shall not be placed." *Id.* While any "interested party" has a right to seek judicial review in the receiving state of that state's disapproval of the placement, there is no right to judicial review in the sending state. *Id.*

{¶ 14} In this case, the record demonstrates the placement was not approved by Kentucky because W.G. had a criminal history involving child abuse as well as at least two other substantiated protective services investigations of W.G.'s engaging in child abuse. The maternal grandparents failed to seek review of that denial in the state of Kentucky, and Ohio courts had no jurisdiction to review it.

{¶ 15} Next, while not expressly argued by Mother, we note that her assignment of error implicitly raises a question of whether the juvenile court erred in terminating her parental rights and awarding permanent custody to DJFS.

{¶ 16} R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the agency, and (2) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 17} A child cannot be placed with a parent within a reasonable time or should not be placed with a parent when that parent is incarcerated for an offense committed against the child or a sibling of the child. R.C. 2151.414(E)(5). In this case, at the time DJFS filed for permanent custody, Mother was incarcerated for child endangerment and felonious assault in relation to her children. Thus, the juvenile court correctly determined that the children should not be placed with Mother.

{¶ 18} Next, R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 19} The evidence regarding the interactions and interrelationships of the children with Mother established that Mother had caused a serious, permanent brain

injury to D.T. and that both boys were malnourished while in her care. As a result of the brain injury, D.T. needed ongoing neurological and optometry treatment. J.A. also had special needs and had ongoing occupational, physical, and speech therapy. The boys were together and doing well in foster care, and the foster family was able to meet their special needs and medical treatment. R.G. and W.G. had not had contact with the children since they were placed in foster care. Based upon this evidence, the court correctly found this factor weighed in favor of granting permanent custody to DJFS.

{¶ 20} With regard the custodial history and need for a legally secure placement, the evidence demonstrated that the children had been in foster care for 18 months at the time of the dispositional hearing. At that point, J.A. had spent approximately half of his life in foster care, and D.T. had spent all but the first two months of his life in foster care. Neither of the boys' fathers was identified by Mother and, despite public notice, no one claimed to be the father of either child. Mother was incarcerated for a significant portion of each child's life, and there was no evidence that she could provide a safe, secure and appropriate home for them. The ICPC prevented the placement of the children with their maternal grandparents, and there was no evidence that any other relative came forward as a potential placement. Thus, the juvenile court reasonably found that these two factors weighed in favor of an award of permanent custody to DJFS, and we agree.

{¶ 21} An appellate court will not reverse a decision regarding permanent or legal custody of a child absent an abuse of discretion by the juvenile court. *In re K.W.*, 185 Ohio App.3d 629, 2010-Ohio-29, 925 N.E.2d 181, ¶ 15 (2d Dist.); *In re M.O.*, 2d Dist. Montgomery No. 26457, 2015-Ohio-2430, ¶ 7. The term "abuse of discretion" implies that the court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v.*

*Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 22} Based upon the record before us, we conclude that the juvenile court did not err in denying Mother's motion for an award of legal custody of the children to the maternal grandfather. We further find that the court's decision to terminate Mother's parental rights and to award permanent custody of the children to DJFS was supported by the evidence.

{¶ 23} Accordingly, the sole assignment of error is overruled.

## III. Conclusion

{¶ 24} Mother's assignment of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

John M. Lintz
Eric M. Sommer
Amanda Lantz
Hon. Katrine Lancaster