[Cite as *In re A.R.*, 2021-Ohio-3615.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| IN RE: A.R. | : | Appellate Case No. 29153 |
|  | : |  |
|  | : | Trial Court Case No. G-2015-005908-0P, 0S |
|  | : |  |
|  | : | (Juvenile Appeal from Common Pleas Court) |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 8th day of October, 2021.

. . . . . . . . . .

MATHIAS H. HECK, JR., by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Appellee MCCS

ALANA VAN GUNDY, Atty. Reg. No. 0100651, P.O. Box 245, Bellbrook, Ohio 45305
      Attorney for Appellant Mother

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Mother appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of Mother's child, A.R., to Montgomery County Children Services (MCCS). Mother filed a timely notice of appeal on May 28, 2021. A.R.'s father did not appeal the termination of his parental rights.

{¶ 2} A.R. was born in May 2013. On September 22, 2015, when A.R. was approximately two years old, MCCS filed a complaint alleging that she was a dependent child. On December 17, 2015, A.R. was adjudicated a dependent child and placed in the custody of maternal relatives. On August 30, 2016, temporary custody of A.R. was transferred to MCCS upon a motion filed by the agency. On July 26, 2017, MCCS filed a motion for permanent custody of A.R., or in the alternative, for an award of legal custody of A.R. to the non-relative foster parents with whom she had been living. On December 5, 2017, the trial court granted legal custody of A.R. to her non-relative foster parents.

{¶ 3} On December 10, 2018, A.R. was placed in the interim temporary custody of MCCS. On April 29, 2019, MCCS was awarded temporary custody of A.R., and on November 19, 2019, MCCS filed a motion for permanent custody of A.R. On September 25, 2020, a permanent custody hearing was held before a magistrate.

{¶ 4} The record established that Mother was placed on a case plan with the following objectives: 1) establish sufficient income and adequate housing; 2) engage in mental health treatment and medication management; 3) refrain from domestic violence and physical abuse with her boyfriend; 4) attend a course on healthy relationships; 5) engage in family counseling, including counseling with A.R.'s two older sisters; 6) refrain

from discussing adult topics and situations in front of A.R.; 7) visit A.R. on a weekly basis; 8) follow the recommendations of her primary care physicians and specialists and take her medications as prescribed; 9) sign releases of information for MCCS and for healthcare providers; 10) attend A.R.'s appointments; and 11) acknowledge that if her boyfriend continued to live with her, he would be required to engage in a case plan before reunification could occur.

{¶ 5} Mother's MCCS caseworker, Rondel Boyd, testified that Mother failed to verify her income, and the only employment verification she provided was a photograph of a 25- to 30-hour weekly schedule at a Wendy's restaurant. Boyd also testified that Mother lived in an efficiency apartment with one bed. Boyd testified that the apartment was always dirty whenever she visited Mother, and the floor was covered in trash, including empty beer cans and cigarette butts. At one point during the course of these proceedings, Mother's apartment was infested by bed bugs. Boyd testified that the apartment had previously flooded, and the carpet, which had not been since removed, smelled like mildew; on some occasions when she visited Mother, Boyd would not enter the apartment because of the intense odor.

{¶ 6} The record also established that Mother had been diagnosed with anxiety, bipolar disorder, and post-traumatic stress disorder, but had stopped taking her prescribed medication during the pendency of the proceedings. Boyd testified that MCCS had also never received any verification of medical treatment from Mother. At one point Mother was removed from treatment at Eastway Services because she repeatedly missed appointments. Boyd testified that Mother continued to speak

inappropriately to and around A.R. regarding adult topics, including other children's sexual behaviors. Furthermore, Boyd testified that Mother and her boyfriend were physically violent with each other. Mother was even arrested on suspicion of felonious assault in regard to an incident in which she allegedly sliced her boyfriend's arm with a box cutter. During the pendency of the proceedings, Mother was also arrested for arson in relation to a fire that occurred at another apartment in her complex, and she spent ten days in jail. The record is unclear regarding the status and/or disposition, if any, with respect to these offenses.

{¶ 7} Boyd testified that, despite being referred to a program, Mother failed to attend any healthy relationship courses. Additionally, Mother visited A.R. sporadically, approximately 65 percent of the time. According to Boyd, Mother reported that her boyfriend had a substance abuse problem and used methamphetamine. Mother's boyfriend also informed Boyd that he had no intention of complying with MCCS as it related to Mother's attempted reunification with A.R., and he would not participate in a case plan.

{¶ 8} Even though Father did not appeal the termination of his parental rights with respect to A.R., it is noteworthy that by his own admission to Boyd, he had been convicted of rape in the past and had served a significant prison sentence. Boyd testified that part of Father's case plan was to engage in sex offender treatment, which he refused to do. Additionally, Father had no contact with A.R. from May 17, 2019, through September 17, 2019. The trial court found that Father had abandoned A.R.

{¶ 9} A.R.'s foster mother, D.C., also testified at the permanent custody hearing. D.C. testified that A.R. had been under her and her husband's care and supervision since December 7, 2018.   D.C. also testified that A.R. had a loving relationship with everyone in her foster home, including D.C.'s older children and her extended family.   At the time of the permanent custody hearing, A.R. was participating in online schooling due to the COVID pandemic, but D.C. testified that A.R. previously had attended a day care, played flag football, and had been involved in activities with D.C.'s church.   D.C. testified that A.R. hiked with her foster family, and they rode bikes together.   D.C. testified that A.R. was a very athletic child, had no identified special needs, and was not on any type of individual education plan (IEP).   D.C. testified that she and her husband were interested in adopting A.R., and there was adequate space for A.R. in D.C.'s home.

{¶ 10} On October 31, 2020, the magistrate granted MCCS's motion for permanent custody of A.R.   Mother filed timely objections and supplemental objections to the magistrate's decision. On May 12, 2021, the trial court overruled Mother's objections and awarded permanent custody of A.R. to MCCS.

{¶ 11} It is from this judgment that Mother now appeals.

{¶ 12} Mother's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO MONTGOMERY COUNTY CHILDREN'S SERVICES BECAUSE THAT AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILD.

{¶ 13} Mother contends that the trial court erred when it awarded permanent custody of A.R. to MCCS, finding that it was in the child's best interest. Specifically, Mother argues that the evidence adduced at the permanent custody hearing established that she had made significant progress toward completing her case plan objectives and should have been allowed more time to successfully be reunited with A.R.

{¶ 14} This Court has previously noted:

The United States Supreme Court has recognized that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized" by the court. *Troxel v. Granville* (2000), 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49. Parents who are suitable persons have a "paramount" right to the custody of their minor children. *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 369 N.E.2d 1047.

In a proceeding for the termination of parental rights, all the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.*, Montgomery App. No. 21749, 2007-Ohio-186, at ¶ 9. * * * We review the trial court's judgment for an abuse of discretion. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 48 (applying abuse-of-discretion standard to trial court's findings under R.C. 2151.414).

*In re K.W.*, 185 Ohio App.3d 629, 2010-Ohio-29, 925 N.E.2d 181, ¶ 14-15 (2d Dist.).

{¶ 15} In applying an abuse-of-discretion standard, we will not disturb the trial court's decision on evidentiary grounds 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.' " *In the Matter of T.S.*, 2017-Ohio-482, 85 N.E.3d 225, ¶ 6 (2d Dist.), citing *In re L.C.*, 2d Dist. Clark No. 2010-CA-90, 2011-Ohio-2066, ¶ 14.  The phrase "abuse of discretion" implies a decision which is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency.  The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. *In re L.W.*, 2d Dist. Montgomery No. 26243, 2014-Ohio-4507, ¶ 11, citing R.C. 2151.414(B)(1).

{¶ 17} R.C. 2151.414(D)(1) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (a) the interaction and interrelationship of the child with the child's parents, relatives, foster

parents and any other person who may significantly affect the child; (b) the wishes of the child; (c) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. "No one element is given greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 57.

{¶ 18} R.C. 2151.414(E) further provides:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child

to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(10) The parent has abandoned the child.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶ 19} Mother does not dispute that, at the time of the permanent custody hearing on September 25, 2020, A.R. had been in the custody of the MCCS for almost five years, well in excess of 12 or more months of a consecutive 22-month period.

{¶ 20} As previously stated, Mother was placed on a case plan with the following objectives: 1) establish sufficient income and adequate housing; 2) engage in mental health treatment and medication management; 3) refrain from domestic violence and physical abuse with her boyfriend; 4) attend a course on healthy relationships; 5) engage in family counseling, including counseling with A.R.'s two older sisters; 6) refrain from discussing adult topics and situations in front of A.R.; 7) visit A.R. on a weekly basis; 8) follow the recommendations of her primary care physicians and specialists and take her medications as prescribed; 9) sign releases of information for MCCS and for healthcare providers; 10) attend A.R.'s appointments; and 11) acknowledge that if her boyfriend continued to live with her, he would be required to engage in a case plan before reunification could occur.

{¶ 21} According to Boyd, Mother had failed to verify her income; she only provided a photograph of a 25- to 30-hour weekly schedule at a Wendy's restaurant. Mother also

lived in an efficiency apartment with only one bed, and the apartment was always dirty when Boyd visited Mother, including trash on the floor. There had been a past bed bug infestation. Boyd testified that the apartment had previously flooded, and the carpet smelled like mildew and had an intense odor.

**{¶ 22}** Mother had been diagnosed with anxiety, bipolar disorder, and post-traumatic stress disorder, but had stopped taking her prescribed medication for these conditions. MCCS had also never received any verification of medical treatment from Mother. Boyd testified that at one point Mother was removed from treatment at Eastway Services because she had repeatedly missed appointments.

**{¶ 23}** Boyd testified that Mother continued to speak inappropriately to and around A.R. regarding adult topics, and Mother and her boyfriend were physically violent with each other. Mother had been arrested on suspicion of felonious assault after she allegedly sliced her boyfriend's arm with a box cutter. Mother had also been arrested for arson, for which she spent ten days in jail.

**{¶ 24}** Boyd testified that Mother failed to attend any healthy relationship courses despite being referred to a program, and she visited A.R. only sporadically. Boyd also testified that Mother reported that her boyfriend had a substance abuse problem and had no intention of complying with any MCCS case plan.

**{¶ 25}** Regarding her current living arrangement, the trial court found that A.R. was bonded with her foster family, with whom she had lived since December 2018. The trial court also found that A.R. was adjusting well to her living situation and was not exhibiting

any behavioral issues, and her foster family was committed to finalizing permanent adoption of A.R.

{¶ 26} We conclude that the trial court did not abuse its discretion when it found that it was in A.R.'s best interest to remain in the custody and care of her foster family where she is apparently thriving. In sum, the record established that MCCS made every reasonable effort to reunite Mother with A.R. Mother's failure to complete the case plan, however, established that she was either unwilling or incapable of adequately caring for A.R. Although Mother made some effort to complete her case plan objectives, the record established that she failed to provide A.R. with safe and adequate housing, failed to maintain stable employment, failed to properly address her abusive relationship with her boyfriend, failed to take the medication for her mental health issues, and failed to take the necessary steps in order to have an appropriate parent/child relationship with A.R. Therefore, we find that the trial court did not err when it found that clear and convincing evidence was adduced at the permanent custody hearing which supported an award of permanent custody of A.R. to MCCS and the termination of Mother's parental rights.

{¶ 27} Mother's sole assignment of error is overruled.

{¶ 28} Mother's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
Alana Van Gundy
Markus Moll, Jr.
Misty M. Connors, GAL
Hon. Anthony Capizzi